**GIBNEY, ANTHONY & FLAHERTY, LLP**
JOHN MACALUSO (JM 2058)
665 Fifth Avenue
New York, New York 10022
Telephone: (212) 688-5151
Facsimile:  (212) 688-8315
E-mail:  JMacaluso@Gibney.com
**And**
**STEPHEN M. GAFFIGAN, P.A.**
STEPHEN M. GAFFIGAN(Admitted Pro Hac Vice)
312 S.E. 17th Street, Second Floor
Ft. Lauderdale, Florida 33316
Telephone: 954-767-4819
Facsimile: 954-767-4821
E-mail: Stephen@smgpa.net

Attorneys for CHANEL, INC., a New York Corporation,

## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHANEL, INC., a New York corporation, <br><br> Plaintiff, <br><br> v. <br><br> BRIGITTE C. VAUGHN a/k/a BRIGITTE C. SIERAU a/k/a BRIGIT VAUGHN and BIBI, INC., individually and jointly, d/b/a BIBISBLINGBLING.COM d/b/a d/b/a BIBISBLINGBLING, and Does 1-10, <br><br> Defendants. | CASE NO. 07-CV-06057 (NRB) <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR DAMAGES** |

Plaintiff, Chanel, Inc., a New York corporation ("Chanel") hereby files its Memorandum of

Points and Authorities in Support of Request for Damages Against Defendants Brigitte C. Vaughn

a/k/a Brigitte C. Sierau a/k/a Brigit Vaughn ("Vaughn") and Bibi, Inc. ("Bibi"), individually and

jointly, d/b/a Bibisblingbling.com d/b/a Bibi, Inc. d/b/a Bibisblingbling (collectively ADefendants@)
as required by this Court's Order, dated March 19, 2008, and states as follows:

## I. <u>INTRODUCTION</u>

As outlined in Plaintiff's Complaint against Defendants Vaughn and Bibi, filed on June
26, 2007 (Docket No. #1), Chanel has sued the Defendants for federal trademark counterfeiting
and infringement pursuant to 15 U.S.C. §1114 (Count I), federal false designation of origin
pursuant to § 43(a) of the Lanham Act (Count II), federal trademark dilution 15 U.S.C. §1125(c)
(Count III), and common law trademark infringement and unfair competition (Counts IV and V).
This suit arose out of Defendants' fraudulent distribution and sale of counterfeit goods, namely,
handbags and costume jewelry, including earrings (the ADefendants'Goods@), under and bearing
the Plaintiff's federally registered and common law trademarks as identified in Paragraph 10 of
the Complaint.  <u>See</u> Docket Number 1.  The Defendants continuously promoted and sold to the
public goods bearing counterfeits of the Chanel Marks with the knowledge the goods were not
genuine and that it was illegal to sell such goods.[1]  This fact is evidenced by the disclaimer on
their Internet website, BibisBlingBling.com, describing the goods as "replica," "look alike," and
"knockoff" which demonstrates the Defendants' clear intent to derive the benefit of the Chanel's
world-famous reputation and to defraud the public.

By their actions, the Defendants were intentionally misrepresenting to the public that their
products were associated with Chanel.  Moreover, the Defendants' infringement and
counterfeiting took place in total reckless disregard for or with willful blindness to Chanel=s
rights and in spite of the Defendants' actual knowledge that their use of the Chanel Marks or
copies thereof, was in direct contravention of Chanel's rights.  The Defendants' unlawful
activities earned them profits and caused irreparable injury and damage to Chanel.  Among other
things, the Defendants deprived Chanel of its right to determine the manner in which its
trademarks are presented to the public through merchandising; defrauded the public into thinking

---

[1] Notably, the Defendants are continuing to operate their BibisBlingBling.com website, and continuing to offer for
sale counterfeit branded merchandise other than Chanel.   This litigation has taught the Defendant nothing.

the Defendants' worthless counterfeit goods are associated with Chanel and wrongfully traded and capitalized upon the Plaintiff's reputation and goodwill and the commercial value of its trademarks.

As the parties have stipulated to liability on all Counts of the Complaint against Defendants Vaughn and Bibi, this Memorandum will only address the remaining issues identified in this Court's Order, dated March 19, 2008.   Attached to this Memorandum are Declarations which support Plaintiff's requests for damages, attorneys' fees and costs.

## II.    ARGUMENT

### A.    The Defendants Are Not Entitled To A Jury Trial, Non-Jury Trial Or An Evidentiary Hearing On The Issue Of Damages.

The Defendants contend they are entitled to a jury trial, a non-jury trial or an evidentiary hearing on the issue of damages.  The Defendants' contention in that regard is without merit.  In an effort to resolve this litigation in an expeditious and cost effective manner, the parties entered into a Stipulated Consent Partial Final Judgment as to liability and entry of a Permanent Injunction (the "Stipulation").  Pursuant to the Stipulation, Judgment was entered in favor of Chanel and against the Defendants on all five Counts of the Complaint.  However, Chanel agreed to elect a statutory damage claim pursuant to 15 U.S.C §1117(c) with respect to Count I of the Complaint and to limit damages on all other claims to whatever amount the Court awards as to Count I.  The parties' agreement to focus solely on a statutory damage award was made in recognition of the fact the Defendants had no ability to produce full and accurate records regarding their counterfeiting activities.   Therefore, a calculation of Defendants' actual profit and/or Chanel's actual damages would be nearly impossible.

Title 15 U.S.C § 1117, provides, in pertinent part, as follows:

**§ 1117. Recovery for violation of rights**

(a) Profits; damages and costs; attorney fees

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

(b) Treble damages for use of counterfeit mark

In assessing damages under subsection (a) of this section, the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee, in the case of any violation of section 1114(1)(a) of this title or section 220506 of Title 36 that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services. In such cases, the court may in its discretion award prejudgment interest on such amount at an annual interest rate established under section 6621(a)(2) of Title 26, commencing on the date of the service of the claimant's pleadings setting forth the claim for such entry and ending on the date such entry is made, or for such shorter time as the court deems appropriate.

(c) Statutory damages for use of counterfeit marks

In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of

statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--

**(1)** not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

**(2)** if the court finds that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

As held in similar cases in this District, determination of statutory damages pursuant to 15 U.S.C §1117(c) is for the Court and not a jury. Gucci America, Inc. v. Accents, 994 F.Supp. 538 (S.D.N.Y 1998) ("If Plaintiffs so elect, the determination of statutory damages, within the specific guidelines set forth in the statute, is for the Court. Cf. Oboler v. Goldin, 714 F.2d 211, 213 (2nd Cir. 1983) (determination of statutory damages for copyright infringement is for the Court rather than jury). Hence, neither a jury nor non-jury trial is appropriate. As for an evidentiary hearing, Plaintiff submits that the need for such should be determined by the Court. Plaintiff has submitted all of its available evidence by Declarations and Exhibits thereto. Defendants will surly do the same in their response. An evidentiary hearing is therefore not likely to add much to the picture. Plaintiff suggests that oral argument could resolve any questions which might arise in the Court's mind regarding proper application of 15 U.S.C §1117.

**B.      Chanel Is Entitled to an Award of Statutory Damages Pursuant to 15 U.S.C. §1117(c)**

As alleged in the Complaint and confirmed in the Stipulation and the Declarations filed in this action, the handbags and costume jewelry distributed, sold and/or offered for sale by the Defendants bore counterfeits of and/or were sold under the Chanel Marks. See Declaration of Adrienne Hahn Sisbarro ("Decl. of Hahn") ¶5 (attached hereto as Exhibit "A"), and Declaration of Robert Holmes ("Decl. of Holmes") ¶¶8 and 11 (attached hereto as Exhibit "B"), and

Declaration of Lynnette Oka ("Decl. of Oka") ¶¶4,10 and true and correct copies of the

Defendants BibisBlingBling.com website attached thereto as Composite Exhibits "1, and"3"

(attached hereto as Exhibit "C").

In a case involving the use of counterfeit marks in connection with a sale, offering for

sale or distribution of goods, 15 U.S.C. ' 1117(c) provides that a plaintiff may elect an award of

statutory damages at any time before final judgment is rendered in the sum of not less than

$500.00, nor more than $100,000.00 per counterfeit mark, per type of goods.  In addition, if the

Court finds that Defendants' counterfeiting actions were willful, then it may impose damages

above the maximum limit up to $1,000,000.00 per infringement. 15 U.S.C. ' 1117(c)(2).

Chanel issued discovery requests seeking all data and documents reflecting Defendants'

sales and profits, and the extent of their counterfeiting activities.   In response, the Defendants

produced a single Merchant Report in an effort to facilitate the parties' settlement negotiations.

See a true and correct copy of Defendants' Merchant Report attached hereto as Composite

Exhibit "D."   The Merchant Report produced did not provide either an accounting of the number

of products bearing counterfeits of the Chanel Marks which have been sold by the Defendants or

the price charged per item.  Additionally, the report selectively produced by the Defendants was

limited to a period of time between 2006 and 2007 and did not cover sales of items bearing

counterfeits of the Chanel Marks prior to that period despite the fact that the

BibisBlingBling.com website was launched in March, 2005.  See Decl. of Holmes at ¶3, and

Exhibit "1" attached thereto.

The Defendants' own website makes it clear they were selling counterfeit Chanel

handbags as early as 2005 because the website contains a customer testimonial about the

purchase of a Chanel handbag dated December 19, 2005.  See Decl. of Oka at ¶¶4, 10 and

Composite Exhibits "1" and "3" attached thereto.   Not only did the Defendants fail to provide a

complete and accurate record of the sales and profits earned through their website

BibisBlingBling.com via debit/credit cards, the Defendants also failed to provide any documents

or information reflecting sales and payments received by the Defendants via PayPal, personal

checks, and/or money orders.   Paypal was expressly identified as an acceptable form of payment

on the BibisBlingBling.com website.  See Composite Exhibits "1,"and "3" attached to the Decl.

of Oka.    Notably, the Defendants produced no sales invoices, purchases orders, ledgers, credit

card statements, receipts or any other documents or information which would assist Chanel or the

Court in determining their actual sales and profit.

     In view of the foregoing, Chanel has no choice but to elect to recover an award of

statutory damages pursuant 15 U.S.C. ' 1117(c).

    **C.**       **Chanel Is Entitled to Enhanced Damages Based Upon Defendants' Willful Counterfeiting and Infringement.**

        **1.**       **The Defendants Acted with Knowledge and Willful Intent.**

     Congress enacted the statutory damages remedy in trademark counterfeiting cases

because evidence of a defendant's profits in such cases is almost impossible to ascertain.  See,

e.g., S. REP. NO. 104-177, pt. V (7) (1995) (discussing purposes of Lanham Act statutory

damages).  This case is no exception.  In light of the large quantity of counterfeit products

advertised, offered for sale, and sold by the Defendants, the significant number of federal

registrations the Defendants were infringing, and the reasonable inference that Chanel's limited

investigation did not capture the full scale of the Defendants' operation, a large statutory damage

award is reasonable and appropriate.

     The Chanel Marks are renowned worldwide as identifiers of high quality merchandise.

The fact the Defendants sold goods using marks which are identical to the Chanel Marks shows

conclusively their desire and purpose to trade upon Chanel's goodwill.  Stern's Miracle-Gro

Prods., Inc. v. Shark Prods., Inc., 823 F. Supp. 1077, 1087 (S.D.N.Y. 1993).  The available

evidence clearly establishes the Defendants are counterfeiters who have no respect for intellectual property laws.  By virtue of Chanel's Federal Registrations, the Defendants had full constructive knowledge of the Chanel's ownership of the Chanel Marks, including its exclusive right to use and license the trademarks and the goodwill associated therewith and Chanel's exclusive right to distribute their handbags and costume jewelry including earrings.  See Hahn Decl. ¶5 together with true and correct copies of Chanel's Federal trademark registrations at issue in this proceeding attached thereto as Composite Exhibit "1," see also Decl. of Oka ¶7 and Composite Exhibit "2" attached thereto. The Defendants also had actual knowledge the products they advertised, offered for sale, and sold were non-genuine as is evidenced by their website printouts identifying the goods as "replicas" and "look alikes" and the delivery of two cease and desist letters from Chanel.  See Oka Decl. ¶¶ 4,10 and websites printouts attached thereto as Composite Exhibits "1,"and "3" and Declaration of Stephen M. Gaffigan ("Decl of Gaffigan") ¶4 together with a true and correct copy of the December 10, 2006 cease and desist letter and draft Complaint served on the Defendants attached thereto as Composite Exhibit "1" (attached hereto as Exhibit "E").

Express evidence of Defendants' intent to capitalize on the reputation and goodwill of the Chanel Marks is found in the identification of the Defendants' Goods offered for sale on the Defendants' website BibisBlingBling.com as "replica," "look alike" and "knockoff."  See true and correct printouts from BibisBlingBling.com attached as Composite Exhibits "1" and "3" to Oka Decl.  Furthermore, the Defendants' disclaimer page on BibisBlingBling.com states as follows about the Defendants' Goods "although … undoubtedly comparable with high quality products, it is not the real thing." See true and correct printouts from BibisBlingBling.com attached as Composite Exhibits "1,"and "3" to Oka Decl.  Further evidence of the Defendants' intent to capitalize on the reputation and goodwill of the Chanel Marks is also found on the disclaimer page of the Defendants' BibisBlingBling.com website in which they acknowledge Chanel's trademark rights and disclaim association.  See true and correct printouts from BibisBlingBling.com attached as Composite Exhibits "1" and"3" to Oka Decl.

Other courts have considered the effect of "replica" type disclaimers similar to the type used by the Defendants and found the use of such disclaimers to be evidence of bad faith and illustrative of the intent to capitalize on the value and renown of the Plaintiff's Marks. For example, in Rolex Watch USA, Inc. v. Jones, 2000 WL 1528263, at *3 (S.D.N.Y. Oct. 13, 2000) the Honorable Judge Cote held as follows:

> Moreover, Jones' bad faith is manifest. Jones' websites show that Jones markets his products as replicas of the Plaintiff's products. Jones undeniably "adopted [his] mark[s] with the intention of capitalizing on Plaintiff[s]' reputation and goodwill and any confusion between his and the senior user[s] product[s]". Lang v. Retirement Living Pub. Co. Inc., 949 F.2d 576, 583 (2d Cir. 1991).
>
> Footnote 1 – the fact that Jones' websites contain a disclaimer stating that his products are replicas, and that "[by] purchasing one of these replicas by [sic] agrees not to sell or represent them as genuine," is not evidence of good faith, as Jones clearly sought to capitalize on the value and renown of the Plaintiff's marks. It also does not diminish the likelihood of confusion. Likelihood of confusion does not focus solely on the party purchasing a product from the defendant; "post-sale confusion as well as point-of-sale confusion [is] actionable under the Lanham Act." Nabisco, Inc. v. PF Brands, Inc., 191 F.3d 208, 218 (2d Cir. 1999).

See also Chanel, Inc. et al. v. Russell, et al., Case No. 1:06-cv-21829-PAS (S.D. Fla. 2006) ("This [disclaimer] evidence bolsters the admissions that Defendant knows the marks were counterfeit and likely to create confusion, yet intentionally offered and sold them anyway.

Additionally, the Defendants conducted their illegal counterfeiting activities even after being served with Chanel's Cease and Desist notices. Specifically, prior to filing this suit, Chanel had its investigator, Robert Holmes, purchase a counterfeit Chanel handbag from the Defendants via the website BibisBlingBling.com. On May 19, 2006, Investigator Holmes paid with debit/credit card to the payee BIBISBLINGBLING.COM 775-291-3284 NV US and received the ordered handbag on May 31, 2006. See Decl. of Holmes at ¶¶5-7 and Composite Exhibit "3" attached thereto. Thereafter on July 6, 2006, Chanel sent a cease and desist letter to Defendants regarding their sale of products bearing counterfeits of the

Chanel Marks. <u>See</u> Oka Decl. ¶ 7 and true and correct copies of Chanel's July 6, 2006 cease and desist letter and cease and desist electronic mail message attached thereto as Composite Exhibit "2." The letter advised Defendants they were engaging in illegal activity and demanded they stop. <u>See</u> <u>Id.</u> Chanel did not receive any response to its cease and desist letter from the Defendants. <u>See</u> Oka Decl. ¶7 together with a true and correct copy of Chanel's cease and desist letter attached thereto as Composite Exhibit "2." Chanel's outside counsel, Stephen M. Gaffigan, issued a second cease and desist letter accompanied by a draft of the Complaint filed in this matter to the Defendants on December 10, 2006. No response was forthcoming and Defendants continued to counterfeit the Chanel Marks. <u>See</u> Decl. of Gaffigan ¶4 and Composite Exhibit "1" attached thereto.

Despite having twice received express notice of the illegality of their activities, Defendants remained persistent in continuing their counterfeiting by offering for sale items bearing counterfeits of the Chanel Marks on their website BibisBlingBling.com. <u>See</u> Holmes Decl. ¶¶11-13, Oka Decl. ¶7, and Gaffigan Decl. ¶4 and supporting Exhibits attached thereto. Upon discovery of the Defendants' post-cease and desist letter continuing counterfeiting activities, Chanel's investigator made a second purchase from the website BibisBlingBling.com by placing an order for a handbag bearing counterfeits of the Chanel Marks via the website for a total of $59.00, before tax. On April 19, 2007, Investigator Holmes paid with debit/credit card to the payee BIBISBLINGBLING.COM 775-291-3284 NV US and received the ordered handbag on May 17, 2007. <u>See</u> Holmes Decl. ¶¶11-14 and a true and correct photograph of the handbag purchased from the Defendants through their BibisBlingBling.com website together with chain of custody attached thereto as Composite Exhibit "5." The second handbag purchased from the Defendants through their

BibisBlingBling.com website by Holmes was sent to Chanel for analysis. Chanel's analysis of the handbag determined it to be counterfeit.  See Hahn Decl. ¶14 and Holmes Decl. ¶15.

Defendants' continuing disregard for Chanel rights is also evidenced in the Merchant Report produced by the Defendants.  See a true and correct copy of the Merchant Report produced by the Defendant attached hereto as Exhibit "D."  In response to Chanel's request for production of documents, the Defendants produced a one page report which allegedly shows sales made by the Defendants during a period of time between March 18, 2006 and September 25, 2007.  Although Chanel believes the Merchant Report produced by the Defendants does not accurately reflect all sales of counterfeit Chanel products made by the Defendants through BibisBlingBling.com, the dates in the report clearly confirm the fact the Defendants continued their counterfeiting activities even after receiving cease and desist letters from Chanel and from Chanel's outside counsel dated July 6, 2006 and December 10, 2006, respectively.  See Oka Decl. ¶7 and Exhibit "2" attached thereto together with the Gaffigan Decl. ¶4 together with a true and correct copy of the cease and desist letter, dated December 10, 2006, and draft Complaint served on the Defendants attached thereto as Exhibit "1."

### 2. A Significant Statutory Damage Award Is Warranted.

In light of the amount of time over which the Defendants conducted their counterfeiting activities, and the fact they continued such activities despite express notice they were engaged in illegal behavior, this Court should award a significant amount of statutory damages available under the Lanham Act to Chanel to ensure Chanel is compensated and the Defendants and others are deterred from future infringement and counterfeiting.

Title 15 U.S.C. § 1117(c) "does not provide guidelines for courts to use in determining an

appropriate award as it is only limited by what the court considers just." Gucci America, Inc. v. Duty Free Apparel, Ltd., 315 F.Supp.2d 511, 520 (S.D.N.Y. 2004) quoting Louis Vuitton Malletier v. Veit, 211 F.Supp.2d 567, 583 (E.D. Pa. 2002) and 15 U.S.C. §1117(c).  Many courts have found some guidance in the caselaw of the analogous provision of the Copyright Act, 17 U.S.C. § 504(c), which also provides statutory damages for willful infringement. See, e.g ., Louis Vuitton, 211 F.Supp.2d at 583, Sara Lee Corp. v. Bags of N.Y., Inc., 36 F.Supp.2d 161, 166 (S.D.N.Y. 1999). Under the Copyright Act, courts look to factors such as: (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on others besides the defendant;" (5) "whether the Defendants' conduct was innocent or willful;" (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (7) "the potential for discouraging the defendant." Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., 807 F.2d 1110, 1117 (2d Cir. 1986), Gucci America, 315 F.Supp.2d at 520. Moreover, it has been held where "a defendant is shown to have acted wilfully, a statutory damages award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others." Rolex Watch U.S.A., Inc. v. Jones, 2002 WL 596354, at *5 (S.D.N.Y. Apr. 17, 2002) (Maas, M.J.), adopted without modification by Judge Cote on June 18, 2002.

Perhaps the best dissertation on the award of statutory damages pursuant to '1117(c) can be found in Sara Lee, 36 F. Supp. 2d. 161 (S.D .N.Y 1989).  The Sara Lee Court stated as follows:

> While '1117(c) looks to compensatory consideration (e.g., actual
> losses and trademark value), it also looks to punitive
> considerations (e.g., deterrence to other infringers and readdress of

12

> wrongful defense conduct)...those, damages inquiries under
> '1117(c) and those under ''1117(a), (b) look to similar
> considerations but differ in that under '1117(c), Athere is no
> necessary mathematical relationship between the size of such an
> award and the extent or profitability of the Defendant=s wrongful
> activity@ because '1117(c) omits the strict limits on
> compensatory and punitive relief of ''1117(a),(b).  <u>Gucci AM,
> Inc. et al.  v.  Gold Ctr. Jewelry, et al.</u>, 997 F. Supp. 399, 404
> (S.D. N.Y.).

The Court has wide discretion to set an amount of statutory damages.  <u>Sara Lee Corp.  v.  Bags of New York, Inc.</u>, 36 F. Supp.2d at 166-67 (collecting cases, analogizing the Copyright Act statutory damages, and describing breadth of court=s discretion in awarding statutory damages under the Lanham Act); <u>Playboy Enters, Inc.  v.  Asia Focus Int=l, Inc.</u>, 1998 U.S. Dist. Lexis 10359 (E.D.Va. 1998); <u>see</u> <u>also</u> <u>Island Software & Computer Serv. v. Microsoft Corp.</u>, 413 F.3d 257, 265 (2d Cir. 2005) ("within the statutory framework, a district judge has wide discretion in setting the statutory damage award" for copyright infringement.); <u>NFL v. Primetime 24 Joint Venture</u>, 131 F. Supp. 2d 458, 472 (S.D.N.Y. 2001) ("It is well-established that district courts have broad discretion in setting the amount of statutory damages within the minimum and maximum amounts prescribed by the Copyright Act.").  Indeed, an award of statutory damages has been determined to be an appropriate remedy even for infringements that caused no proved actual damages.  <u>Id.</u> at 166; <u>See also</u> <u>Playboy Enterprises, Inc.  v.  Universal Tel-A Talk, Inc.</u>, 1998 U.S. Dist. LEXIS 17282 (E.D. PA. 1989) (ADefendants did not have any profits and plaintiff has failed to prove actual damages.  Nevertheless, Plaintiff may elect to recover statutory damages.@).

    The evidence in this case shows the Defendants offered for sale and sold at least two (2) types of goods, namely handbags and earrings, in multiple styles, bearing marks which were in

fact counterfeits of the Chanel Marks protected by eight (8) Federal registrations for such goods. See Hahn Decl. ¶5, and Holmes Decl. ¶¶5, 11, and Exhibits attached thereto to each Declaration. A chart outlining each Chanel Registration and the infringement thereof is attached to the Decl. of Gaffigan as Exhibit "2."   Based on the above considerations, Chanel respectfully suggests the Court could start with a baseline statutory award of $1,000.00 ($500 per Defendant) per mark counterfeited per type of goods, treble it to reflect the Defendant's willfulness, and then double the product for the purpose of deterrence. The result would be $6,000 per registered Chanel Mark counterfeited (8) per type of goods sold (2 – handbags and earrings), for a total award of amount $96,000.00 in statutory damages.  Chanel believes that amount fairly achieves the statutory goals of compensation and punishment.  A similar damage model was recently suggested by Magistrate Judge Orenstein and accepted by District Judge Cogan in Chanel, Inc. v Schwartz, Case No. 06 CV 3371 (E.DN.Y. 2007).  The Schwartz case involved a single Defendant, a single website, and no cease and desist letter, and the Court used a baseline statutory award of $500 per mark counterfeited per type of goods.

Chanel submits that  the award requested herein should be sufficient to deter the Defendants and others from continuing to counterfeit or otherwise infringe Chanel's trademarks, compensate Chanel, and punish the Defendants, all stated goals of 17 U.S.C. § 1117 (c).  See Sara Lee Corp., 36 F. Supp. 2d at 165.   The Plaintiff's damage request is well below the statutory maximum and reasonable in light of the number of items apparently being sold by the Defendants.  While the Defendants' poor record keeping has prevented Chanel from obtaining competent discovery regarding Defendants' sales, it is reasonable to conclude the number of counterfeit and infringing units sold by the Defendants which were identified during the course of Chanel's investigation do not constitute the whole of the Defendants' counterfeiting activities

with respect to the Chanel Marks.  Additionally, it is reasonable to conclude the Defendants

operated a successful counterfeiting operation based on the fact that the Defendants continuously

operated their Internet website since at least March 30, 2005 (See Holmes Decl. ¶4 and a true and

correct copy of the WHOIS search printout of BibisBlingBling.com attached thereto as Exhibit

"1") and continued to operate the website and to offer for sale counterfeit Chanel products even

after receiving Chanel's two cease and desist letters.

      Other courts have granted significant statutory damages under the Lanham Act in line

with the Plaintiff's request herein.  See, e.g., Sara Lee Corp., 36 F. Supp. 2d at 170 (awarding

$750,000.00);Tommy Hilfiger Licensing, Inc. v. Goody's Family Clothing, Inc., 2003 U.S. Dist.

LEXIS 8788 (N.D. Ga. 2003) (awarding $2,100,000.00); Playboy Enters., Inc., 1998 U.S. Dist.

LEXIS 10359 (awarding $500,000.00 per type of good for Defendants' counterfeiting of five of

Playboy's trademarks); Chanel, Inc. v. Diana Prustman et al., Case No. 2:02-cv-34-FtM-29 DNF

(M.D. Fla. 2002) (summary judgment awarding $5,000,000.00); Gucci America, Inc. v. RIN,

LLC et al., Case No. 03-21798-civ-COOKE/McAliley (S.D. Fla. 2004) (summary judgment

awarding $2,700,000.00) Chanel, Inc. v. Hugo Rios et al., Case No. CV-03-273-RSWL(PJW)

(C.D. Cal. 2003) (awarding $750,000.00).  Chanel's damage request is reasonable.

      **C.**    **Chanel's Damages for Counts II, III, IV and V.**

      In addition to trademark counterfeiting and infringement (Count I), the Plaintiff's

Complaint also sets forth causes of action for false designation of origin pursuant to § 43(a) of

the Lanham Act (15 U.S.C. § 1125(a)) (Count II), trademark dilution pursuant to 15 U.S.C.

§ 1125(c) (Count III), common law trademark infringement and unfair competition (Counts IV

and V).  As to Counts II, III, IV and V, the allowable scope of monetary damages mirrors that

allowed by 15 U.S.C. § 1117 for Count I.   Accordingly, judgment on Counts II, III, IV, and V

should be limited to the amount awarded pursuant to Plaintiff's request above with respect to Count I.

**D.      Chanel Should be Awarded Its Reasonable Attorney Fees.**

      **1.      Entitlement to Fees.**

Chanel is entitled to recovery of its reasonable attorney fees incurred pursuant to 15 U.S.C. § 1117 (a) and/or (b).  Generally, in trademark infringement cases, an award of attorney's fees is warranted pursuant to the "exceptional case" standard of 15 U.S.C. §1117(a) where, as here, infringement was willful. See Kepner-Tegoe, Inc. v. Vroom, 186 F.3d 283, 289 (2d Cir. 1999). Also, pursuant to 15 U.S.C. § 1117(b), reasonable attorney fees must be awarded when a defendant intentionally uses a mark, knowing such mark is a counterfeit mark.  Only if the Court finds extenuating circumstances can the Court limit such recovery.  Fendi S.a.S. Di Paola v. Cosmetic World, 1 U.S.P.Q. 2d 1508, 1511 (S.D.N.Y. 1986); see also Louis Vuitton S.A. v. Pun Yan Lee, 875 F.2d 584, 588 (7th Cir. 1989).   The extenuating circumstance defense is an affirmative defense which should be pled but, in this case, was not pled by the Defendants.  See Louis Vuitton, 875 F.2d at 590.

While questions have been raised about the availability of an award of attorney's fees where statutory damages are also awarded, courts have found both appropriate in "exceptional cases" of willful infringement. Silhouette Int'l Schmied AG v. Vachik Chakhbazian, 2004 WL 221160, at *3 (S.D.N.Y. Oct. 4, 2004) (listing cases); Sara Lee Corp., 36 F.Supp. at 170 (awarding both without comment). Compare Gucci Am., Inc. Gucci America, Inc. v. Duty Free Apparel, Ltd., 315 F.Supp. at 522-23 (refusing award of attorney's fees in addition to statutory damages "which are available ' *instead* of actual damages' " (quoting 15 U.S.C. § 1117(c) (emphasis in case)). In any event, the Court need not decide the issue in order to award fees in

this case.

Under the Stipulated Judgment in this case, the Defendants are liable to Chanel on its claim for unfair competition under 15 U.S.C. § 1125(a). As noted above, the Court may award attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a); see, e.g., New York State Soc. of Certified Public Accountants v. Eric Louis Assoc., Inc., 79 F.Supp.2d 331, 347 (S.D.N.Y.1999); 5 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 30:104. Because the Defendants' acts of unfair competition were also engaged in willfully, and a willful violation satisfies the "exceptional case" requirement of § 1117(a), an award of Chanel's attorneys' fees and costs is appropriate. See, e.g., International Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc., 80 F.3d 749, 753 (2d Cir. 1996) ("an award of attorney fees may be justified when bad faith infringement has been shown"); Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir.1995) (" 'Exceptional' circumstances include willful infringement."); Sara Lee Corp. v. Bags of New York, Inc., 36 F.Supp.2d 161, 170 (S.D.N.Y.1999); 5 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 30:99 (citing Senate Committee report for proposition that willful infringement constitutes "exceptional case"), § 30:100 (courts routinely awarded attorneys' fees to prevailing plaintiffs in counterfeiting cases even before enactment of 1996 counterfeiting amendments, citing cases). Here, Chanel has presented substantial evidence that the Defendants' infringement in this case was willful. Therefore, Chanel submits that an award of attorney's fees and expenses is warranted in this case.

## 2.      Calculation of Fees.

Under the lodestar approach, the estimated fee is determined by multiplying the number of hours reasonably expended on the litigation by a reasonable rate. Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992) (citing Blanchard v. Bergerson, 489 U.S. 87, 94 (1989). There is a "strong

presumption" that the lodestar is reasonable, however, the calculated amount may be adjusted, depending on such considerations as the novelty and difficulty of the issues concerned and the experience and ability of the attorneys. See Toys "R" Us, Inc. v. Abir, 1999 WL 61817, at *1-2 (S.D.N.Y. Feb. 10, 1999).  In determining a reasonable hourly rate, the court should consider the rates for legal services "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (quoting Blum v. Stevenson, 465 U.S. 886, 895 n. 11 (1984). In addition, the court may also rely on its own knowledge of hourly rates charged in private firms to determine what is reasonable in the relevant community.  Miele v. New York State Teamsters Conf. Pens & Retirement Fund, 831 F.2d 407, 409 (2d Cir. 1987). For purposes of determining the fee, the relevant community is the judicial district in which the trial court sits.  In re Agent Orange Prod. Liability Litig., 818 F.2d 226, 232 (2d Cir. 1987).

Plaintiff's counsel spent approximately 58 hours of attorneys' time in this case in connection with investigative oversight, litigation and settlement discussions.  As detailed in the Gaffigan Decl. ¶6, and the Declaration of John Macaluso ("Macaluso Decl.") attached hereto as Exhibit "F", these hours were reasonable in light of the nature of the Defendants' counterfeiting operations.  Plaintiff's counsel charged the rates between $150 and $375 per hour for (See Macaluso Decl. together with true and correct copies of Gibney, Anthony & Flaherty billing detail attached thereto as Composite Exhibit "1") and $350.00  (See Gaffigan Decl. together with true and correct copies of his billing detail attached thereto as Composite Exhibit "3") per hour for their services.  Attorneys' fees incurred in this matter total $17,988.50.  See Gaffigan Decl. ¶6 and Macaluso Decl. ¶5.  These rates are either equal to or less than the prevailing market rates for comparable services in the Southern District of New York, where this action was filed.

Plaintiff's counsel made every reasonable effort to minimize hours spent on the case, to avoid redundant or otherwise unnecessary time, and the fee requested is equal to or below the amount spent on similar past cases. Id. The fee is also reasonable in light of the extent of the Defendants' conduct. Moreover, the fee is reasonable in light of the fact that the legal services in this case were performed by experienced intellectual property litigators.

Chanel also incurred investigative charges in the total amount of $1,248.00 which were necessary to uncover information regarding the Defendants' illicit activities. See Holmes Decl. ¶17. Investigative charges are recoverable under the Lanham Act. Fila U.S.A. v. RunRun Trading Co., 1996 U.S. Dist. LEXIS 6893 (S.D.N.Y. 1996); Louis Vuitton S.A., v. Downtown Luggage Center, 706 F. Supp. 839, 842 (S.D. Fla. 1988); see also the Joint Statement on Trademark Counterfeiting Legislation, which expressly provides that "to the extent that an investigator acts under the direction of an attorney, however, his or her fees may be recovered by a prevailing plaintiff as part of an award of attorney fees." 130 Cong. Rec. H12083 (October 10, 1984).

### E.     Costs Should Be Awarded.

Chanel also requests that this Court award costs in the total amount of $650.00. See Gaffigan Decl. ¶11 and Macaluso Decl. at ¶9. These costs consist of the following:

| | |
|---|---|
| Filing Fee: | $ 350.00 |
| Process Server Fee: | $ 305.00 |

**III.    CONCLUSION**

In view of the foregoing, Chanel respectfully requests the following:

a.    That the Court enter a finding as that the Defendants' illegal activities were engaged in willfully and maliciously pursuant to 15 U.S.C. § 1117(b), and that this case is "exceptional" within the meaning of 15 U.S.C. §1117(a);

c.    Award statutory damages to Chanel in an amount not less than ninety six thousand dollars ($96,000.00);

d.    Award Chanel's attorneys fees in the amount of $17,988.50;

g.    Award Chanel's investigative fees in the amount of 1,248.00; and

h.    Award Chanel's costs in the amount $605.00.

RESPECTFULLY SUBMITTED this _9_th day of April, 2008.

GIBNEY, ANTHONY, & FLAHERTY, LLP

By: *John Macaluso*

John Macaluso
665 Fifth Avenue
New York, New York 10022
Telephone: (212) 688-5151
Facsimile: (212) 688-8315
E-mail: jmacaluso@gibney.com
*Attorney for Plaintiff Chanel, Inc.*