BS_M1_COVER_Defts_Damages_Memorandum_042908.doc

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
:
**CHANEL, INC., a New York corporation,**       :       **ECF CASE**
:
:       **07 CV 6057  (NRB)**
                           **Plaintiff,**       :
:
-against-                                       :
:
**BRIGITTE C. VAUGHN, et al.,**                 :
:
                           **Defendants.**      :
:
------------------------------------------------------------------------x


**DEFENDANTS' MEMORANDUM ON DAMAGES**




**Dated:   New York, New York**
          **April 29, 2008**


                                    **Carl E. Person   (CP  7637)**
                                    **Attorney for Defendants, Brigitte C. Sierau**
                                         (sued herein as "Brigitte C. Vaughn a/k/a Brigitte
                                         C. Sierau a/k/a Brigit Vaughn) and **Bibi, Inc.**
                                    **325 W. 45th Street - Suite 201**
                                    **New York, New York 10036-3803**
                                    **(212) 307-4444**

## TABLE OF CONTENTS

Page(s)

**Jury Demand** .................................................................................................................. 1

**Counts and Affirmative Defenses** ................................................................................. 2

**Facts – Defendants' Financial Condition; Sales and Profits** ......................................... 3

**A.  Bibi's Financial Condition** .................................................................................... 3

**B.  Brigitte C. Sierau's Financial Condition** .............................................................. 3

**C.  Relating to the Requested Injunctive Relief** ......................................................... 4

**D.  Total Sales and Profits Concerning Chanel-Type Items** ....................................... 5

I.     THE ISSUE OF DAMAGES IS A JURY ISSUE AS TO
       VARIOUS COUNTS IN THE COMPLAINT ....................................................... 5

II.    DEFENDANT HAS A RIGHT TO A JURY TRIAL
       ON THE ISSUE OF STATUTORY DAMAGES .................................................. 8

III.   DEFENDANTS' FINANCIAL CONDITION IS RELEVANT
       TO DETERMINATION OF STATUTORY DAMAGES ..................................... 9

IV.    PUNITIVE OR STATUTORY DAMAGES IN EXCESS OF
       FOUR TIMES THE AMOUNT OF ACTUAL
       DAMAGES BORDERS ON UNCONSTITUTIONAL ....................................... 10

V.     ATTORNEYS' FEES SHOULD NOT BE AWARDED
       - PLAINTIFF'S ACTUAL DAMAGES ARE DE MINIMIS ............................... 12

VI.    INJUNCTIVE RELIEF SHOULD NOT BE GRANTED
       BECAUSE THE DEFENDANTS CEASED THEIR
       INFRINGEMENT ACTIVITIES PRIOR TO
       COMMENCEMENT OF THIS ACTION
       AND HAD MINIMAL SALES PRIOR TO CESSATION ................................. 15

**Conclusion** .................................................................................................................. 16

# TABLE OF CASES AND AUTHORITIES

**Page(s)**

*Bar-Meir v. North American Die Casting Ass'n*, 55 Fed. Appx. 389, 390-391
(8th Cir. 2003) .................................................................................................. 5

*Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 488 (6th Cir. 2007) ............ 11

*Daenzer v. Wayland Ford, Inc.*, 210 F.R.D. 202, 204 (W.D. Mich. 2002) ........................ 9

*Empresa Cubana Del Tabaco v. Culbro Corp.*, 123 F.Supp.2d 203, 209-210
(S.D.N.Y. 2000) ................................................................................................ 6

*Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 342,
118 S.Ct. 1279, 1281-1282 (1998) ..................................................................... 8

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F.Supp.2d 136, 147-149
(S.D.N.Y. 2000) ................................................................................................ 12

*Microsoft v. MBC Enterprises*, 120 Fed.Appx. 234 (10th Cir. 2004) ................................ 8

*Philip Morris USA v. Williams*, 127 U.S. 1057, 1062-1064 (2007) ................................. 10

*Rosco, Inc. v. Mirror Lite Co.*, 2006 WL 2844400 (E.D.N.Y. 2006) ................................ 15

*Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1016 (7th Cir. 1991) ...................... 9

**U.S. Constitution**

5th Amendment, Denial of Due Process ............................................................................ 10

BS_M1_Defts_Damages_Memorandum_042908.doc

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

| | |
|---|---|
| CHANEL, INC., a New York corporation, | ECF CASE |
| Plaintiff, | 07 CV 6057 (NRB) |
| -against- | |
| BRIGITTE C. VAUGHN, et al., | |
| Defendants. | |

------------------------------------------------------------------------x

## DEFENDANTS' MEMORANDUM ON DAMAGES

This memorandum is prepared on behalf of the Defendants, **Brigitte C. Sierau** (sued herein as "Brigitte C. Vaughn a/k/a Brigitte C. Sierau a/k/a Brigit Vaughn) and **Bibi, Inc.** (hereinafter, "Defendants"), in response to the "Stipulated Consent Partial Final Judgment as to Liability and Permanent Injunction" dated March 19, 2008 (the "Stipulation").

**Jury Demand**

In page 8 of their Answer dated November 13, 2007, the Defendants made the following jury demand:

### Jury Demand

Defendants hereby demand a trial by jury of all issues properly triable to a jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

In page 1 of the docket sheet for this action, the Clerk made the following entry based on the above Jury Demand and Answer filed by the Defendants:

```
Date Filed: 06/26/2007
Jury Demand: Defendant
Nature of Suit: 840 Trademark
Jurisdiction: Federal Question
```

It should be noted that this is not a default judgment, in which the defaulting party loses any right it may have had to a jury trial.

In ¶ 4 of the Stipulation, the Defendants gave their "consent to the entry of Final Judgment as to their ... liability on all Counts of Chanel's Complaint in this proceeding."

Defendants did not stipulate that damages would be tried other than by jury trial.

**Counts and Affirmative Defenses**

Plaintiff's Complaint has the following Counts:

1.  Trademark Counterfeiting and Infringement;

2.  False Designation of Origin Pursuant to § 43(a) of the Lanham Act;

3.  Trademark Dilution;

4.  Common Law Trademark Infringement;

5.  Common Law Unfair Competition.

Defendants' Answer contained the following relevant Affirmative Defenses:

**AFFIRMATIVE DEFENSES**

**1st Affirmative Defense**

66..   Unconstitutionality of statutory damages of $1,000,000 for each counterfeit Chanel Mark used and product sold, as provided by 15 U.S.C. § 1117(c)(2), to the extent statutory damages exceed three times the amount of defendant's profits or sales derived from illegal use of Plaintiff's marks at issue. The maximum liability of the Defendant is 3 times 0 or Zero (if based on profits, of which there were one) or 3 times $200 (equal to $600), if based on gross profits.

2

### 2nd Affirmative Defense

67..     Unconstitutionality of statutory attorneys fees to the extent they exceed three times the amount of defendant's profits or sales derived from illegal use of Plaintiff's marks at issue.  See the analysis in paragraph 66 above.

### 3rd Affirmative Defense

68..     Unconstitutionality of statutory attorneys fees to the extent they are unreasonable in relation to the dollar amount of the Defendant's liability for actual damages.

*  *  *

### 7th Affirmative Defense

72..     *De minimis* as to Plaintiff's alleged monetary damages.

### 8th Affirmative Defense

73..     Defendants' alleged activities stopped about one year prior to commencement of this lawsuit and website descriptions about which Plaintiff complains were removed by the Defendants.

### 9th Affirmative Defense

74..     Unclean hands due to bad faith commencement and prosecution of this *de minimis* lawsuit.

**Facts – Defendants' Financial Condition**

The financial condition of each of the Defendants, Brigitte C. Sierau (sued under the name Brigitte C. Vaughn) and her company, Defendant Bibi, Inc. ("Bibi") is set forth below:

### A. Bibi's Financial Condition

Bibi is still operating; it has a bank account with about $1,000 in the account; it has inventory at cost of about $2,000 (none of which is Chanel-type goods); it has no accounts receivable.  There have been no transfers of any assets out of Bibi since it began operations in 2005.  Bibi has never earned any profits, and has never paid any income taxes.

### B. Brigitte C. Sierau's Financial Condition

Brigitte C. Sierau ("Sierau") owns no house or real estate; she owns no car or other vehicle. She owns no stock, bonds or other securities. She has no trust interests and has no retirement funds. She has personal jewelry having a value of less than $1,000 (none of which is inventory); she personally has no inventory; she has credit card debt and a loan of about $33,000 total. She has about $3,000 in her savings account (which she uses to pay rent of $2,300 per month) and about $200 in her checking account. She is leasing a car for $430/month. Her monthly income is about $1,200 and she has been receiving financial assistance from her family and a friend in order to meet her monthly obligations.

Sierau is single and has no children.

She does not make enough to pay any income taxes, which has been true for about the past 5 years.

She cannot afford this lawsuit and owe her attorney about $1,097 (for his services for the past 2 months, up to April 18, 2008). Prior to that time, she paid her (undersigned) attorney $1,759.19. Her total legal fees for this lawsuit (including the unpaid amount) are about $2,856 up to April 18, 2008.

### C. Relating to the Requested Injunctive Relief

Before this lawsuit was commenced, Sierau stopped offering and selling Chanel-type items. She quit offering and selling all infringing items relating to Chanel.

When she received a notice from Chanel to stop offering and selling Chanel-type products, she directed her website programmer (an independent contractor) to take all Chanel items off of her website, which he did. However, there were certain hidden words in the website which he failed to

4

take off, unknown to Sierau, and contrary to her instructions, which could have allowed internet searches to find her website for Chanel items even though she was no longer offering or selling such items. These words (which may be part of what is called "metatags") or something like that, have since been deleted.

### D. Total Sales and Profits Concerning Chanel-type Items

Bibi's total sales of Chanel-type items from inception to the date Bibi stopped selling these items was about $500 to $600.

Bibi's cost of goods was about $250 to $300.

Bibi's advertising, travel, and other expenses (prior to this lawsuit) were about $100 relating to Chanel.

12.     Bibi made almost no profit on these sales and when taking Sierau's time into account at $10 per hour Bibi was losing money on these sales.

13.     Defendants stipulated to liability to reduce the costs of litigation for both sides, and Defendants have tried to settle this action without success.

### I.

### THE ISSUE OF DAMAGES IS A JURY ISSUE AS TO VARIOUS COUNTS IN THE COMPLAINT

In *Bar-Meir v. North American Die Casting Ass'n*, 55 Fed. Appx. 389, 390-391 (8th Cir. 2003), the Court held:

> * * * Bar-Meir made a timely demand for a jury trial, see Fed.R.Civ.P. 38(b), and he did nothing to waive that demand, see Fed.R.Civ.P. 39(a) (when jury trial has been demanded, parties must stipulate in writing or in open court to have trial by court). We thus hold that Bar-Meir is entitled to have a jury determine the amount of

5

damages. See *391 Feltner v. Columbia Pictures Tel., Inc., 523 U.S. 340, 353-54, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998) (Seventh Amendment right to jury trial in action for statutory damages under Copyright Act extends to having jury determine amount of damages); Cass County Music Co. v. C.H.L.R., Inc., 88 F.3d 635, 641-42 (8th Cir.1996) (patent and copyright infringement actions are treated same).

Accordingly, we affirm in part and reverse in part, vacate the award of damages, and remand for further proceedings in which Bar-Meir may exercise his right to have a jury determine the damages.

In *Empresa Cubana Del Tabaco v. Culbro Corp.*, 123 F.Supp.2d 203, 209-210 (S.D.N.Y. 2000), the Court stated:

> Absent proof of willful intent on the part of a defendant to trade upon and to dilute a plaintiff's trademark, a trademark dilution plaintiff limited to injunctive relief as a remedy for its federal trademark dilution claim. 15 U.S.C. § 1125(c)(1) ("[T]he owner of the famous mark shall be entitled only to injunctive relief ... unless the person against whom the injunction is sought willfully intended to trade on the owner's reputation or to cause dilution of the famous mark."); *see* 15 U.S.C. § 1125(c)(1) (injunctive relief is "subject to the principles of equity and ... such terms as the court deems reasonable"); *Ringling Bros.,* 955 F.Supp. at 599-600 (discussing 15 U.S.C. §§ 1125(c)(1) and (2)). As the court in *Ringling Bros.* observed:
>
> [T]he Act's pertinent language makes clear the essentially equitable nature of the dilution claim and therefore reflects Congressional intent to commit the dilution cause of action to a court without a *210 jury.... In the absence of willful intention to dilute, therefore, the Act's limitation to traditional equitable relief plainly means that Congress, conscious of centuries of settled jurisprudence excluding juries in purely equitable matters, intended to commit a dilution claim to a court without a jury.
>
> 955 F.Supp. at 599-600 (citations omitted); *see* 9 Wright & Miller, *Federal Practice & Procedure* § 2308 (Supp.2000). Nor does the Seventh Amendment require a trial by jury on such a claim where the only remedy available is injunctive in nature. "[W]here only an injunction is available to remedy dilution, the Seventh Amendment does not compel a jury trial." *Id.* at 603 (citation omitted); *see* 9 Wright & Miller, *Federal Practice & Procedure* § 2308 (Supp.2000). Therefore, to the extent that Cubatacabo is limited to injunctive relief on its federal dilution claim, the claim is equitable in nature and does not give rise to a jury trial right.
>
> Where willful intent is shown, a trademark dilution plaintiff:

6

shall [in addition to injunctive relief] also be entitled to the remedies set forth in sections 1117(a) and 1118 of this title, subject to the discretion of the court and the principles of equity.

15 U.S.C. § 1125(c)(2). However, even if Cubatabaco were able to establish willful intent on the part of General Cigar, and therefore could obtain other forms of relief besides an injunction, in this case the only additional relief sought by and available to Cubatabaco is equitable in nature. Under § 1117(a), a trademark dilution plaintiff may seek disgorgement of the defendant's profits, money damages, and costs. Under § 1118, the plaintiff may seek a destruction order. A claim for money damages would trigger the right to a jury trial. *Ringling Bros.,* 955 F.Supp. at 605. However, where there is no evidence of damages, the plaintiff is limited to the other forms of relief under §§ 1117 and 1118, all of which are equitable. *Ringling Bros.,* 955 F.Supp. at 603.[FN3]

FN3. The Fourth Circuit affirmed the district court holding without addressing this point. *See Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.,* 170 F.3d 449, 465 (4th Cir.1999).

As to the issue of attorneys' fees, the *Empresa* decision continued, at p. 211:

It is well settled that a claim for attorneys' fees and costs under the Lanham Act does not entitle a party to a trial by jury. *Nikon, Inc. v. Ikon Corp.,* 803 F.Supp. 910, 928 (S.D.N.Y.1992); *Partecipazioni Bulgari S.p.A. v. Meige,* 7 U.S.P.Q.2d 1815, 1817 (S.D.Fla.1988); *see also Basch,* 968 F.2d at 1543 ("The decision whether or not to award such fees (under Lanham Act) also rests within the broad discretion of the district judge.") ( *citing Getty Petroleum Corp. v. Bartco Petroleum Corp.,* 858 F.2d 103, 114 (2d Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989)); **Ringling Bros., 955 F.Supp. at 605 ("Costs are merely incidental to and intertwined with other available remedies. Thus, where the other available remedies are wholly equitable, costs are also an equitable remedy.") (citation omitted);** *cf. Daisy,* 999 F.Supp. at 549 (noting plaintiff did not dispute that its claim for attorneys' fees was equitable in nature and did not entitle it to a jury trial); *Ideal World,* 997 F.Supp. at 335 (noting defendant's argument that plaintiff was not entitled to jury trial because it withdrew damages claim and now sought entirely equitable relief, including costs and attorneys' fees). Thus, General Cigar is not entitled to a jury on this requested relief. [Emphasis supplied.]

7

## II.

## DEFENDANT HAS A RIGHT TO A JURY TRIAL
## ON THE ISSUE OF STATUTORY DAMAGES

In *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 342, 118 S.Ct. 1279, 1281-1282 (1998), the Supreme Court held (in a copyright infringement action):

Section 504(c) of the Copyright Act of 1976 permits a copyright owner "to recover, instead**\*\*1282** of actual damages and profits, an award of statutory damages ..., in a sum of not less than $500 or more than $20,000 as the court considers just." 90 Stat. 2585, as amended, 17 U.S.C. § 504(c)(1). In this case, we consider whether § 504(c) or the Seventh Amendment grants a right to a jury trial when a copyright owner elects to recover statutory damages. We hold that although the statute is silent on the point, the Seventh Amendment provides a right to a jury trial, which includes a right to a jury determination of the amount of statutory damages. We therefore reverse. [p. 342]

\* \* \*

We have recognized the "general rule" that monetary relief is legal, *Teamsters v. Terry, supra,* at 570, 110 S.Ct., at 1347-1348, and an award of statutory damages may serve purposes traditionally associated with legal relief, such as compensation and punishment. See *Curtis v. Loether,* 415 U.S., at 196, 94 S.Ct., at 1009 (actual damages are "traditional form of relief offered in the courts of law"); *Tull v. United States,* 481 U.S., at 422, 107 S.Ct., at 1838 **\*353** "Remedies intended to punish culpable individuals ... were issued by courts of law, not courts of equity"). Nor, as we have previously stated, is a monetary remedy rendered equitable simply because it is "not fixed or readily calculable from a fixed formula." *Id.,* at 422, n. 7, 107 S.Ct., at 1838, n. 7. And there is historical evidence that cases involving discretionary monetary relief were tried before juries. See, *e.g., Coryell v. Colbaugh,* 1 N.J.L. 77 (1791) (jury award of "exemplary damages" in an action on a promise of marriage). Accordingly, we must conclude that the Seventh Amendment provides a right to a jury trial where the copyright owner elects to recover statutory damages. [pp. 352-353]

In *Microsoft v. MBC Enterprises*, 120 Fed.Appx. 234 (10th Cir. 2004), the Court held:

We conclude the district court erred in granting summary judgment in favor of Microsoft on its copyright and federal trademark infringement claims.FN1

FN1. Our conclusion that the district court erred in granting summary judgment in favor of Microsoft renders moot the following issues raised by defendants on appeal: (1) whether the court erred in considering alleged hearsay evidence submitted by

8

Microsoft; and (2) whether the court violated defendants' right to a jury trial by awarding statutory damages to Microsoft under the Copyright Act and the Lanham Act. In the event the case proceeds to trial on remand, however, we note with respect to the damages award under the Copyright Act, 17 U.S.C. § 504, and the Lanham Act, 15 U.S.C. § 1117, the Supreme Court has held the right to a jury trial under the Seventh Amendment attaches. See Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 353-55, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998) (copyright); Dairy Queen v. Wood, 369 U.S. 469, 477-79, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) (trademark).

### III.

### DEFENDANTS' FINANCIAL CONDITION IS RELEVANT TO DETERMINATION OF STATUTORY DAMAGES

In *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1016 (7th Cir. 1991), the Court held:

To the extent that it is correct to view statutory damages as some sort of a penalty, there is undoubtedly still greater justification for characterizing them as a "legal" remedy. Tull, 481 U.S. at 422, 107 S.Ct. at 1838 ("[r]emedies intended to punish culpable individuals ... were issued by courts of law, not courts of equity"); Curtis, 415 U.S. at 197, 94 S.Ct. at 1010 (punitive damages are "legal" rather than "equitable").

In *Daenzer v. Wayland Ford, Inc.*, 210 F.R.D. 202, 204 (W.D. Mich. 2002), the Court held:

Finally, the Sixth Circuit has affirmed the award of costs and a reasonable attorney's fee even where those amounts well exceeded the recovery in a TILA case. Purtle v. Eldridge, 91 F.3d 797, 802 (6th Cir.1996). The Sixth Circuit squarely said, "The attorney's fees are not limited by the amount of Purtle's recovery." Id. Here, Plaintiff won summary judgment on the TILA claim, and the only reason she is denied statutory damages is because of the financial situation of Defendant.

The Court in *Acevedo-Luis v. Pagan*, 478 F.3d 35 (1st Cir. 2007) held:

B. The Jury Instructions on Punitive Damages

[4] The court also committed no error in instructing the jurors that they could consider Pagán's financial resources, in her personal capacity, in fixing the amount of punitive damages. The plaintiff's argument is that this instruction was misleading because it was possible that Puerto Rico would indemnify the defendant under a statute commonly referred to as "Law 9." See P.R. Laws Ann. tit. 32, §§ 3085-3092.

9

It was entirely proper to instruct the jury that it could consider the defendant's financial worth in assessing punitive damages. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 269, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); see also 4 L. Sand et al., Modern Federal Jury Instructions, Instruction 77-5 & n. 21 (collecting cases).

### IV.

### PUNITIVE OR STATUTORY DAMAGES IN EXCESS OF FOUR TIMES THE AMOUNT OF ACTUAL DAMAGES BORDERS ON UNCONSTITUTIONAL

In *Philip Morris USA v. Williams*, 127 U.S. 1057, 1062-1064 (2007), the Supreme Court stated:

> And in State Farm, this Court said that the longstanding historical practice of setting punitive damages at two, three, or four times ***1062** the size of compensatory damages, while "not binding," is "instructive," and that "[s]ingle-digit multipliers are more likely to comport with due process." 538 U.S., at 425, 123 S.Ct. 1513.
>
> * * *
>
> For these and similar reasons, this Court has found that the Constitution imposes certain limits, in respect both to procedures for awarding punitive damages and to amounts forbidden as "grossly excessive." See Honda Motor Co. v. Oberg, 512 U.S. 415, 432, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994) (requiring judicial review of the size of punitive awards); Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 443, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001) (review must be de novo); BMW, supra, at 574-585, 116 S.Ct. 1589 (excessiveness decision depends upon the reprehensibility of the defendant's***1063** conduct, whether the award bears a reasonable relationship to the actual and potential harm caused by the defendant to the plaintiff, and the difference between the award and sanctions "authorized or imposed in comparable cases"); State Farm, supra, at 425, 123 S.Ct. 1513 (excessiveness more likely where ratio exceeds single digits). Because we shall not decide whether the award here at issue is "grossly excessive," we need now only consider the Constitution's procedural limitations.

To the extent that statutory damages exceed 9 times the amount of the Defendants' profits, such damages are unconstitutional, as a denial of due process through arbitrary confiscation of the Defendants' property.

Also, in the instant case, the imposition of statutory damages amounting to several thousand dollars or more would be the creation of an obligation which the Defendants have no ability to pay and would not be avoidable in bankruptcy, as a further indication of the unreasonableness of such amount.

In *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 488 (6th Cir. 2007), the Court held:

> 2. Disparity
>
> The disparity between compensatory and punitive damages in this case further supports the conclusion that the punitive damages award is unconstitutional, for three reasons. First, the ratio of the overall damages award to the punitive damages award-approximately 9.5:1 ($3.5 million / $366,939)-is large. Although the Supreme Court has repeatedly rejected the use of bright-line rules, it has cautioned that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process," State Farm, 538 U.S. at 425, 123 S.Ct. 1513, and **it has noted that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." Id. (citing Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 23-24, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991)); see also Clark, 436 F.3d at 606.** [Emphasis supplied.]

It should be noted that the Defendants had no profits, or almost no profits, by reason of the activities in question. In addition, the Defendants have a negative net worth. Any amount of statutory damages beyond several thousand dollars would be more than 9 times the Defendants' profits (if any) and unconstitutional. Also, statutory damages of several thousand dollars would be beyond the ability of the Defendants to pay, because of their impoverished financial condition.

The Plaintiff has been aware of the Defendants' financial condition for months, and should have no right to recover any legal fees for pursuing a de minimis claim, having de minimis statutory damages.

V.

**ATTORNEYS' FEES SHOULD NOT BE AWARDED
- PLAINTIFF'S ACTUAL DAMAGES ARE DE MINIMIS**

In *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F.Supp.2d 136, 147-149 (S.D.N.Y. 2000), the Court discussed the award of attorneys' fees at length, as follows:

**B. Attorney's Fees**

Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Gidatex asks this Court to award attorneys' fees totaling $552,263.00, charged by its counsel, Whitman Breed Abbott & Morgan LLP ("Whitman Breed").

[9] [10] A case does not qualify as "exceptional" under the Lanham Act without a finding of fraud or bad faith. *See Conopco, Inc. v. Campbell Soup Co.,* 95 F.3d 187, 194 (2d Cir.1996) ("[T]his court has explicitly stated that '[the Lanham Act] allows recovery of a reasonable attorney's fee only ... 'on evidence of fraud or bad faith.' ") (quoting *Twin Peaks Productions, Inc. v. Publications International, Ltd.,* 996 F.2d 1366, 1383 (2d Cir.1993) (internal citation omitted)). Indeed, "a district court that fails to consider awarding attorney fees when bad faith is established abuses its discretion." *Goodheart Clothing Co. v. Laura Goodman Enterprises, Inc.,* 962 F.2d 268, 272 (2d Cir.1992). The mere existence of a finding of bad faith, however, does not automatically entitle the prevailing party to attorneys' fees. *See International Star Class Yacht Racing Association v. Tommy Hilfiger, U.S.A., Inc.,* 80 F.3d 749, 753 (2d Cir.1996) ("[A]n award of attorney fees *may* be justified when bad faith infringement has been shown.") (emphasis added). As both Gidatex and Campaniello acknowledge, this Court has discretion to deny an award of attorneys' fees, even with the jury's finding of bad faith.[FN9]

FN9. *See* Memorandum of Law in Support of Plaintiff's Motion for Attorneys' Fees, Costs, Prejudgment Interest and an Enhanced Recovery of Profits Pursuant to 15 U.S.C. § 1117(a), at 3; Defendants' Opposition to Plaintiff's Motion for Attorneys' Fees, Costs, Prejudgment Interest and an Enhanced Recovery of Profits Pursuant to 15 U.S.C. § 1117(a), at 4-5.

Gidatex argues that the jury's finding of bad faith supports an award of attorneys' fees in this case. Some courts have awarded attorneys' fees based solely on a finding of bad faith. *See Fruit of the Loom, Inc. v. American Marketing Enterprises, Inc.,* No. 97 Civ. 3510, 1999 WL 172968, at *2 (S.D.N.Y. Mar. 26, 1999) (" *FOL I* "), *adhered to on reconsideration,* 1999 WL 527989 (S.D.N.Y. July 22, 1999) (" *FOL II* "); *\*148 Independent Living Aids, Inc. v. Maxi-Aids, Inc.,* 25 F.Supp.2d 127, 130 (E.D.N.Y.1998). Other courts have looked to additional factors. *See Lurzer GmbH v. American Showcase, Inc.,* No. 97 Civ. 6576, 1998 WL 915894, at *4-*5 (S.D.N.Y.

12

Dec. 30, 1998) ("Even in a case where, as here, the defendant engaged in willful deception, a court may decline to award [attorneys'] fees if there are other, mitigating factors."), *clarified,* 1999 WL 111931 (S.D.N.Y. Mar.4, 1999), *aff'd,* 1999 WL 1295917 (2d Cir.1999); *Simon & Schuster, Inc. v. Dove Audio, Inc.,* 970 F.Supp. 279, 302 (S.D.N.Y.1997) ("Although we find that Dove willfully infringed ..., we do not believe this case qualifies as 'exceptional' in order to justify an award of attorneys' fees."). I find the latter approach more persuasive; this Court must look beyond the jury's finding of bad faith to determine whether this case is an "exceptional" one that merits an award of attorneys' fees.

[11] In support of its argument that this case is exceptional, Gidatex points to several alleged instances of bad conduct on the part of Campaniello, some of which formed the basis for the jury's finding of bad faith: (1) deliberately ignoring the adverse results of an earlier litigation; (2) deliberately ignoring "cease and desist" letters sent from Gidatex to Campaniello's counsel and to Campaniello personally; and (3) engaging in litigation tactics designed to delay these proceedings and harass Gidatex. *First,* while the prior litigation involved aspects of the relationship between Gidatex and Campaniello, it had nothing to do with whether Campaniello could use Gidatex's trademark. *See Campaniello Imports, Ltd. v. Saporiti Italia S.P.A.,* No. 95 Civ. 7685, 1996 WL 437907 (S.D.N.Y. Aug. 2, 1996), *aff'd,* 117 F.3d 655 (2d Cir.1997). *Second,* all of Gidatex's examples must be placed in a broader context; this litigation is one battle in a larger legal war with fronts on two continents. *See Gidatex VI,* 1999 WL 796181, at *8 ("[T]hese parties have been in litigation on other matters for at least five years on two different continents."); *Gidatex II,* 13 F.Supp.2d at 423-24 (describing procedural history). As Judge Jed Rakoff noted in *Lurzer:*

[O]ne cannot isolate the jury's finding of willful infringement from the broader context of this case: endless sparring and protracted litigation by belligerent parties who insist in couching in one-sided fashion what to any outsider appear to be multifaceted disagreements for which both sides bear blame and as to which neither party comes with unclean hands.

*Lurzer,* 75 F.Supp.2d at 102.

*Third,* a review of the litigation reveals that each party raised contested issues and that Gidatex did not prevail on every one. This Court denied Gidatex's request for a preliminary injunction because of Gidatex's inexcusable delay and because it appeared that Gidatex was "concerned less with the loss of control over the Saporiti Italia mark and more with the suppression of Campaniello as a potential competitor." *Gidatex I,* 13 F.Supp.2d at 420.[FN10] On the other hand, Campaniello's counterclaims for breach of contract (subject to mandatory arbitration) and unfair competition and misappropriation (failure to state a claim) were dismissed, *see Gidatex II,* 13 F.Supp.2d at 424-30, and Campaniello's request for entry of a final judgment was denied, *see Gidatex IV,* 73 F.Supp.2d at 346-49. As trial approached, Campaniello tried to exclude the testimony of Gidatex's investigators as well as

13

three secretly-obtained tape recordings; this motion was denied. *See Gidatex V,* 1999 WL 731609, at *3-*8. Finally, after trial, Campaniello's equitable defenses of unclean hands, laches and acquiescence were rejected. *See Gidatex VI,* 1999 WL 796181, at *1-*4.

FN10. Gidatex's request for expedited discovery was also denied. "While its claim on the merits appears to be a reasonably strong one, it is not so overwhelmingly likely to prevail at trial" as to merit expedited discovery. *Gidatex I,* 13 F.Supp.2d at 420.

Although this litigation has resulted in more judicial opinions than the average *\*149* case, each step taken by Campaniello has been justifiable. *Compare Guess?, Inc. v. Gold Center Jewelry,* 997 F.Supp. 409, 412 (S.D.N.Y.1998) (awarding attorneys' fees under Lanham Act where "defendant's conduct with respect to the litigation has caused needless expense for the plaintiff and unnecessarily consumed a great deal of the Court's time") *with Simon & Schuster,* 970 F.Supp. at 302 (refusing to award attorneys' fees where the case "presented a number of close and contested issues"). It is important to remember that the jury found bad faith trademark infringement and unfair competition, not bad faith litigation tactics.[FN11]

FN11. In support of its argument that Campaniello had no good-faith defenses, Gidatex cites this Court's statements at two pre-trial conferences, to the effect that Campaniello should remove the sign. *See* April 24, 1998 Hearing, at 9 ("If I were running a store, I would never sell the last couch so that I could keep the sign up until 2010."); December 3, 1998 Hearing, at 16 ("The reason you want the great big sign is so people will walk in your store. It's obvious. The sooner it's down, the better.... [T]he sign should come down and you can't win."). The Court's comments were not findings of fact.

Campaniello argues that this is not an "exceptional case" because Gidatex recovered a relatively small amount of monetary damages, including no actual damages. Courts in this district have disagreed as to whether the failure to recover monetary damages should be a factor in deciding whether to award attorneys' fees. *Compare FOL II,* 1999 WL 527989, at *2 ("[W]hile other courts may have decided not to award attorney's fees where no money damages have been shown, the failure to prove actual damages does not preclude an award of attorney's fees.") *with Lurzer,* 75 F.Supp.2d at 102 (noting the absence of material evidence that Lurzer suffered any ascertainable damage "from the few, isolated acts of infringement that formed the basis of the jury's award"). I find the issue of monetary damages persuasive not because Gidatex received so little, but because it requested so much. At trial, Gidatex sought an accounting of Campaniello's profits from sales of Il Loft products, as well as more than a million dollars in actual damages. *See* Trial Tr. at 208-24, 973-76. These demands provided ample motivation for Gidatex to continue this litigation.

14

Campaniello also argues that an award of attorneys' fees would be counter to this Court's jury instructions, as well as the expressed wishes of the jury. In its first note, the jury asked: "[D]oes the verdict have any effect on how the legal expenses of this case will be borne by the two parties, and if so, how?" Trial Tr. at 982. After consulting with the parties, the Court instructed the jury: "The answer is that the verdict has no effect on how the legal expenses of this case will be borne by the two parties." *Id.* at 983. Campaniello argues that, based on this note, the jury did not want to award attorneys' fees. Even if this speculation were true, the decision whether to award attorneys' fees is a matter for the court, not the jury. *See* 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."); *Nikon, Inc. v. Ikon Corp.,* 803 F.Supp. 910, 928 (S.D.N.Y.1992) ("[A]n award of attorney's fees under the statute is equitable in nature and is to be decided by the court, and not by a jury.").

After considering the relevant case law, the facts of this case, and the history of this litigation, I conclude that this case does not qualify as an "exceptional case" under the Lanham Act, despite the jury's finding of bad faith. As a result, Gidatex's request for attorneys' fees is denied.

By reason of the foregoing and the following facts, there should be no award of attorneys' fees:  The Defendants have stipulated as to liability. Defendants' sales were miniscule.  The Defendants have had no profits.  The Defendants have no actual damages. Defendants' only reason for suing and continuing this lawsuit has been to obtain legal fees and statutory damages, neither of which involved damages caused by the Defendants to the Plaintiff.  This is not an exceptional case.

## VI.

### INJUNCTIVE RELIEF SHOULD NOT BE GRANTED BECAUSE THE DEFENDANTS CEASED THEIR INFRINGEMENT ACTIVITIES PRIOR TO COMMENCEMENT OF THIS ACTION AND HAD MINIMAL SALES PRIOR TO CESSATION

In *Rosco, Inc. v. Mirror Lite Co*., 2006 WL 2844400 (E.D.N.Y. 2006), the Court stated:

Rather, the request for an injunction should be denied only when "the evidence is very persuasive that further infringement will not take place." Id. For example, where the infringer no longer had the manufacturing capacity to produce the infringing item, a permanent injunction was not appropriate.

15

**Conclusion**

For the reasons set forth above, it is respectfully requested that a trial by jury be held as to all damages issues; that no injunction be granted; that attorneys' fees be denied; and that statutory damages be limited to 4 times the amount of Defendants' proven profits, if any.

**Dated:**   **New York, New York**
        **April 29, 2008**

_____

**Carl E. Person   (CP  7637)**
**Attorney for Defendants, Brigitte C. Sierau**
    (sued herein as "Brigitte C. Vaughn a/k/a Brigitte
    C. Sierau a/k/a Brigit Vaughn) and **Bibi, Inc.**
**325 W. 45th Street - Suite 201**
**New York, New York 10036-3803**
**(212) 307-4444**

**CERTIFICATE OF SERVICE**

It is hereby certified that a true and correct copy of the foregoing

**DEFENDANTS' MEMORANDUM ON DAMAGES**

was served on the attorney for the Plaintiff by causing the same to be delivered by first class mail, postage pre-paid to:

> **John Macaluso, Esq.**
> **Gibney, Anthony & Flaherty, LLP**
> **665 Fifth Avenue**
> **New York NY  10022**

**Dated:   April 29, 2008**

_____
                        **Carl E. Person**